James HANDLE, Plaintiff,

v.

CITY OF LITTLE ROCK, et al., Defendants.

Civ. No. LR–C–90–613.

United States District Court, E.D. Arkansas, W.D.

Aug. 20, 1991.

Robert R. Cortinez, Cortinez Law Firm, Little Rock, Ark., for plaintiff.

Victra L. Fewell, City Attorney's Office, Little Rock, Ark., for defendants.

## ORDER

ROY, District Judge.

On April 30, 1991, the Court directed the plaintiff to file a Second Amended Complaint. The Court also directed the parties to advise the Court as to whether the Court could proceed with consideration of the pending dispositive motions as they were then presented, or whether the filing of the Second Amended Complaint required new motions to be filed.

On May 28, 1991, the defendants filed additional motions to dismiss and motions for summary judgments, adopting by reference the previously filed motions to dismiss/motions for summary judgment. The plaintiff filed a response and a motion for summary judgment, affidavits have been filed by all parties in support of their positions, and the matters are now ripe.

In the Second Amended Complaint, the plaintiff seeks compensatory damages against the City of Little Rock and compen-

satory and punitive damages against the remaining defendants. Plaintiff seeks damages because of his alleged illegal arrest and beating by certain police officers and because of an alleged de facto custom and pattern and practice of using excessive physical force.

In listing the constitutional violations, plaintiff contends that certain officers arrested him without probable cause and subjected him to an unnecessary custodial arrest. Plaintiff also contends that the officers used excessive and unreasonable force on plaintiff to effect his arrest. Plaintiff then states:

26. The LRPD has a defacto [sic] custom and pattern and practice which condones the use of excessive physical force on arrestees by its officers.

27. There have been many instances of alleged excessive use of force before and after this occurrence and no adequate action has been taken by the LRPD, chief or the City of Little Rock to correct or ameliorate the problem even though they are aware or reasonably should be aware of it. They are all liable to plaintiff for compensatory and punitive damages because they willfully or knowingly failed in their duty to eliminate this custom and pattern and practice which they are or reasonably should be aware of.

28. The defendant supervisors at the scene had a duty to control the officers under their command to prevent the beating of plaintiff, and they failed to do so. Their standing by amounted to acquiescence in the tort, and it is a proximate cause of the occurrence. They are all liable to plaintiff for compensatory and punitive damages.

29. The defendants other than those listed had a duty to train the officers to prevent such an occurrence as this, and they failed in that duty and that was a proximate cause of plaintiff's injuries as well.

Defendants have filed two separate motions. One is the Motion to Dismiss Second Amended Complaint and Motion for Summary Judgment of separate defendants City of Little Rock and Chief Caudell. The other is the Motion to Dismiss/Motion for Summary Judgment of separate defendants John Martin and Duane Chapman. After reviewing the relevant pleadings as well as the relevant legal authority, the Court finds that the motions should be granted.

In the original motion to dismiss/motion for summary judgment filed on behalf of the City of Little Rock and Chief Caudell, defendants contend that the amended complaint fails to state facts to support a cause of action against the City and Chief Caudell, and that they are entitled to have the amended complaint dismissed as to them, pursuant to Fed.R.Civ.P. 12(b)(6).

In their motion to dismiss Second Amended Complaint and motion for summary judgment, the City and Chief Caudell contend that the Second Amended Complaint fails to remedy the defects of the first amended complaint and fails to state a cause of action against the defendants and should, therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Defendants further state that Chief Caudell acted at all times as a certified law enforcement officer employed by the City of Little Rock Police Department; that he acted at all times relevant to this lawsuit in compliance with Arkansas law and federal constitutional law; and that his actions were at all times legal, in compliance with clearly established law and objectively reasonable under the facts and circumstances known to him. Defendant argues that the plaintiff has alleged no facts and cited no authority which demonstrate that Chief Caudell violated clearly established law and is therefore entitled to summary judgment in his individual capacity on the basis of qualified immunity.

*City of Little Rock and Louie C. Caudell*

With respect to the claims against the City of Little Rock and Chief Caudell in his official capacity, plaintiff states in paragraph one of the Second Amended Complaint that defendants are being sued because of the occurrence itself and a de facto custom and pattern and practice of using excessive physical force against arrestees by officers of the Little Rock Police

Department. Other allegations against the City and Chief Caudell have already been enumerated above.

■ In § 1983 suits, neither a municipality nor a police supervisor may be held liable for the alleged acts of their employees or subordinates under a vicarious liability theory, such as *respondeat superior.* *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir.1985). To hold a municipality liable under § 1983, a plaintiff must establish that:

> "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's officers]," *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), or that a "constitutional deprivation [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–691, 98 S.Ct. at 2035–36.

*Marchant v. City of Little Rock,* 741 F.2d 201, 204 (8th Cir.1984).

■ Furthermore, a § 1983 plaintiff must establish the existence of a city policy or custom under *Monell* in order to recover against city employees in their official capacities. *Id.*

Plaintiff alleges that there is a policy causing the use of excessive force by LRPD officers. The only fact alleged in the complaint to support this allegation is contained in paragraph 27 where plaintiff makes the conclusory statement that "[t]here have been many instances of alleged excessive use of force before and after this occurrence ..." In plaintiff's affidavit, plaintiff states:

> There have been other instances of the use of excessive force before this occurrence, for example in the Ray E. Jung case in 1983, U.S. District Court Case No. LR–C–84–266; and I have read newspaper accounts of other alleged incidents.

■ Opinions, legal conclusions and bare assertions contained in an affidavit are not sufficient to meet a party's evidentiary burden on summary judgment. *See Cermetek, Inc. v. Butler Avpak, Inc.,* 573 F.2d 1370, 1376–77 (9th Cir.1978). In addition, a § 1983 plaintiff must prove that "past complaints of police misconduct had ... merit," and "the number of complaints bears no relation to their validity." *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir. 1987).

■ Regarding the lawsuit involving Ray Jung referred to by the plaintiff, defendants have presented the affidavit of Sgt. David Ebinger, one of the defendants in the *Jung* case. Sgt. Ebinger's affidavit establishes that the defendants were either granted a directed verdict or a jury verdict was returned in their favor on all issues.

■ Finally, as to newspaper articles, the articles themselves, unsubstantiated by testimony, may show no more than notice to the city that allegations had been made, but would not be admissible to prove the truth of the allegations of excessive force. *See Carter v. District of Columbia,* 795 F.2d 116, 123 (D.C.Cir.1986).

Plaintiff also criticizes the regulation No. 1/6005.00, stating that it offers no guidance to arresting officers regarding the use of force, and allows police officers to use unreasonable and excessive force in effecting arrests. Plaintiff alleges:

> Because the arresting officer can act with impunity to being disciplined through the regulation because it gives absolutely no guideline as to the use of force but leaves the level of force entirely to the discretion of the arresting officer; therefore, the said regulation fosters the use of unreasonable and excessive force by an arresting officer against arrestees.

The Eighth Circuit held in *Britt v. Little Rock Police Dept.,* 721 F.Supp. 189, 195 (E.D.Ark.1989) that "a policy of not pursuing those who present no apparent danger might be a desirable rule for a police department to adopt, but this Court can find no authority holding that it is a Constitu-

tionally required one." (citations omitted). One can deduce from *Britt* that while a certain policy might be a desirable rule for a police department to adopt, the Court cannot assume, without authority, that the policy is constitutionally required.

Copies of the policies governing the use of force by Little Rock police officers which were in effect in September, 1989 were attached to Chief Caudell's affidavit. The regulations prohibit the use of "unnecessary violence" against any person, and prohibit LRPD officers from willfully mistreating or treating inhumanely any person held in custody. Caudell explained how they are applied and enforced. Clearly, Rules and Regulations Nos. 1/6002, 1/6004 and 1/6005 are constitutional on their face, and plaintiff has failed to come forward with any proof which indicates that they are applied unconstitutionally. As the record now stands, the plaintiff has presented only a vague and conclusory allegation of alleged uses of excessive force and one incident in which a jury found that excessive force was not used. Plaintiff's personal opinion and speculation on how the policies might be applied is of little value. *See State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1145 (7th Cir.), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983).

The Supreme Court has held that we are not to consider the constitutionality of municipal policies in the abstract. *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1553 (11th Cir.1989), *quoting Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). "[i]nstead, *Garner* teaches that the federal courts are to focus only on the constitutionality of specific applications of a challenged policy to specific factual circumstances." *Kerr*, 875 F.2d at 1553. In *Kerr*, the Court concluded that a municipal policy is not unconstitutional if it might *permit* unconstitutional conduct in some circumstances; it is unconstitutional only if it *"require[s]* its officers to act unconstitutionally." *Id.* at 1554 (emphasis in the original).

The plaintiff has failed to establish that the City of Little Rock has a policy, ordinance, regulation or custom adopting or requiring the use of excessive force, that the regulations foster unreasonable or excessive force, or that the regulations require officers to act unconstitutionally.

■ In paragraph 29 of the Second Amended Complaint, plaintiff makes vague reference to a failure to train claim. However, the undisputed affidavits of Chief Caudell, Sgt. Phillip Wilson, and Sgt. Duane Chapman establish both the extent of training provided to Little Rock officers on the use of force, as well as the nature of the training. The plaintiff has not met his burden to show what a municipal police department must provide in terms of either the number of hours or the substance of use-of-force training. As discussed by the defendant, the Supreme Court specifically addressed the proof necessary to establish a policy of "failure to train" in *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The Court in *Canton* held that:

> the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact.

*Id.* 109 S.Ct. at 1204–05. Plaintiff has come forward with no evidence indicating that the defendants City of Little Rock, Chief Caudell, Sgt. Chapman, or Lt. Martin were deliberately indifferent to the rights of the public in the training of officers regarding the use of excessive force. In fact, the undisputed affidavits show otherwise.

Based upon the foregoing, the Court finds that the motion for summary judgment filed on behalf of the City of Little Rock and Chief Caudell in his official capacity should be granted.

■ Additionally, the Chief cannot be held directly liable in his individual capacity for acts of others which occurred when he was not present. *Ginter v. Stallcup*, 869 F.2d 384, 386 n. 4 (8th Cir.1989). Therefore, summary judgment is granted in favor of Chief Caudell in his individual capacity.

*John Martin and Duane Chapman*

Since the Court has found that the claims against the City should be dismissed, the claims against defendants Martin and Chapman in their official capacities are also dismissed. In paragraph 7 of the Second Amended complaint, plaintiff alleges that the defendants, "John Martin and Duane Chapman, as immediate supervisors of officers, Richard E. Kinsey, Curtis Briggs, and D.K. Martin, are sued in their individual and official capacity." In paragraph 28, plaintiff alleges that the defendant supervisors at the scene had a "duty to control the officers under their command to prevent the beating of plaintiff, and they failed to do so." The Court will consider the pleadings sufficiently specific to state a claim against Chapman and Martin, but finds that their motion for summary judgment should be granted.

In the affidavit of Sgt. Duane Chapman, Sgt. Chapman states that neither he nor Lt. Martin entered the trailers with the entry team. As immediate supervisor, Sgt. Chapman stood just outside the trailers and Lt. Martin took a position some distance away. Sgt. Chapman further stated:

I saw the plaintiff when he was brought out of his trailer. He was yelling and cursing and was completely uncooperative. He did not claim that force had been used on him, and he did not complain of any injury. I saw no visible sign of injury. I did not hear or see anything that made me suspect that any force had been used against him, other than taking control of him to handcuff him and walk him outside the trailer.

In my 18 years as a police officer (and two years in the Military Police, prior to that), I have seen numerous people, including police officers, who have been injured in fights, altercations or attacks. I have seen people who were struck in the head with hard objects, similar to a rifle butt, and I have seen people who have been attacked and kicked by more than one person. In my experience, these kinds of attacks cause quite noticeable injuries. Had the plaintiff had such injuries, I believe they would have been readily apparent, and I would have seen them.

After the occupants were removed from the trailers, the Tactical Unit turned them over to other officers and left the scene. Plaintiff has failed to allege any facts which could be construed to hold these defendants liable on a theory that they knew of prior uses of excessive force by the "entry team" or any other LRPD officers. Sgt. Chapman's affidavit establishes that neither he nor Lt. Martin was actually present in the trailer when the entry team encountered the plaintiff and that neither of them saw the plaintiff until he was outside the trailer. Sgt. Chapman's affidavit thus establishes that he and Lt. Martin were therefore in no position even to know about any alleged use of force against him. The affidavit also establishes that after the entry team removed the plaintiff from the trailer, no members of the Tactical Unit had any further contact with him. Members of the Unit did not interview the plaintiff or others at the scene. Their mission was accomplished when they removed everyone from the trailer. It further establishes that there was no claim or complaint by the plaintiff and no physical evidence to suggest that he had been struck or injured. Police supervisors cannot be held liable for "standing by" and "acquiescing" in conduct of which they are totally unaware.

Police supervisors cannot be held liable on the basis of *respondeat superior,* but can be held liable only for their own actions or inactions which cause a violation of a citizen's rights by their subordinates. Plaintiff has not met his burden of bringing forth any evidence that the alleged use of force by the subordinates of Sgt. Chapman and Lt. Martin should be attributable to Sgt. Chapman and Lt. Martin.

Furthermore, the Court fails to see how Sgt. Chapman and Lt. Martin were negligent in supervising their subordinates during this one incident. Even if the Court found otherwise, a single incident of negligent supervision does not give rise to a constitutional claim against police supervisors. *Rasmussen v. Larson,* 863 F.2d 603, 605 (8th Cir.1988).

Based upon the foregoing, the Court hereby grants summary judgment in favor

**440**

of the City of Little Rock, Chief Louie Caudell, Sgt. Duane Chapman, and Lt. John Martin. Plaintiff's motion for summary judgment is denied.